1  BOHM, MATSEN, KEGEL & AGUILERA, LLP
2  Lee A. Wood (SBN 58676)
   Richard A. Semon (SBN 156510)
3  695 Town Center Drive, Suite 700
4  Costa Mesa, CA 92626
   Telephone: (714) 384-6500
5  Facsimile:  (714) 384-6501
6
7  Attorneys for Defendants
   CITY OF MAYWOOD, BRUCE LEFLAR, FRANK MENCHACA,
8  JASON PERKINS, JOHN BOSTON, BRETT BURNS
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ARNOLD GONZALES, | CASE NO.: **CV05-6953RJK (VBKx)** |
|---|---|
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| v. | |
| CITY OF MAYWOOD, BRUCE LEFLAR, FRANK MENCHACA, JASON PERKINS, JOHN BOSTON, BRETT BURNS individually and as peace officers, DOES 1-10, inclusive. | **Pretrial Date:** September 15, 2008<br>**Time:** 1:30 p.m.<br>**Courtroom:** 1439 |
| Defendants. | **Trial Date:** None Set |

**TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

Defendants CITY OF MAYWOOD, BRUCE LEFLAR, FRANK MENCHACA, JASON PERKINS, JOHN BOSTON and BRETT BURNS present the following memorandum of contentions of fact and law in support of the evidence and argument they intend to offer at the trial of this matter.

///

# I.

## SUMMARY OF FACTUAL CONTENTIONS

1.  On September 27, 2003, at approximately 5:01 a.m., Maywood Police Department Officers Boston, Perkins, Brazil, Burns, Leach and Menchaca were dispatched to 4648 52nd Place in Maywood, California.

2.  The resident of the home had reported that a male suspect was knocking on the rear winder of her residence and was yelling for her to open the door. She described the suspect as a male Hispanic gang member type.

3.  Upon the officers' arrival, Plaintiff Arnold Gonzalez ("Gonzalez") was seen standing along the southwest or rear corner of the resident's home. He was also seen holding a stainless steel pipe.

4.  Officer Menchaca ordered Gonzalez to drop the pipe. Gonzalez, however, turned away from Officer Menchaca and started running southbound through the home's backyard.

5.  Office Menchaca ordered Gonzalez to stop running. Gonzalez, though, continued running through the backyard and jumped over the residence's rear wall.

6.  Officers Menchaca, Perkins and Boston gave chase while continuously ordering him to stop.

7.  On jumping over the fence, Gonzalez fell to the ground. Gonzalez got back up and continued running south through the back yard.

8.  Officer Burns, who had positioned himself at 4653 53rd St., saw Gonzalez jump over the fence and fall to the ground. When Gonzalez got up and continued running, Office Burns ordered him to the ground. Gonzalez did not obey the command.

9.  Officers Burns, Boston and Menchaca were, however, able to take him into custody at that time.

10. The steel pipe that was earlier seen in Gonzalez's possession was located by Officer Menchaca along the west side of 4653 53rd St.

11. Officer Perkins searched Gonzalez subsequent to his arrest. During the search, a small folded dollar bill containing an off-white crystalline like substance resembling methamphetamine in base form was found on Gonzalez.

12. The substance was tested by Officer Menchaca and found to be methamphetamine.

13. Gonzalez was transported to the Maywood Police Department for booking. He was charged with prowling pursuant to California *Penal Code* section 647(i) and possession of a controlled substance pursuant to *Health and Safety Code* section 113377.

14. Gonzalez was thereafter transported to the Los Angeles County detention center.

15. Gonzalez refused medical attention while he was the Maywood Police Department.

## II.

## STATEMENT OF LEGAL CONCLUSIONS

16. Plaintiff alleges the following causes of action in his Complaint for Damages: (1) Violation of Civil Rights (42 U.S.C. section 1983) against all individual Defendants; (2) *Monell* Claim (42 U.S.C. section 1983) against the City of Maywood; (3) Assault and Battery against the City of Maywood and Officers Menchaca, Boston, Burns and Perkins; (4) False Arrest against the City of Maywood and Officers Menchaca, Boston, Burns and Perkins; (5) Conspiracy against all Defendants; (6) Torts in Essence against all Defendants; (7) Intentional Infliction of Emotional Distress against all Defendants; (8) Negligence against all Defendants; (9) Negligent Employment against Defendant Chief of Police Bruce Leflar; and (10) California Civil Rights Claim against all Defendants. Plaintiff also seeks punitive damages against all of the individual Defendants.

///

///

## III.

## DEFENDANTS LEFLAR, MENCHACA, BOSTON, BURNS AND PERKINS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S CLAIM FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, ET SEQ.

17. Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To this extent, it is not merely a defense from liability but an entitlement to not go to trial. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001).

18. In evaluating claims of qualified immunity, the first question to be asked is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, 583 U.S. at 201. If no constitutional right is found to have been violated, then the there is no further need to inquire into the immunity. If, however, the question is affirmatively answered, the next question becomes whether the constitutional right was clearly established at the time of the incident such that a reasonable officer would have known that his or her conduct was a violation of the individual's rights. *Id.*

19. In turn, claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment as outlined in *Graham v. Connor*, 490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989), and *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed. 1 (1985). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. This balancing test involves consideration of the totality of the facts and circumstances of the particular case, including "the severity of the crime

at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

20. These factors take into consideration that officers are allowed to use a certain amount of force because they are "often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . ." *Id.*, 490 U.S. at 397; See also, *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) ["The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of all of the relevant circumstances."]

21. Given all of the circumstances that confronted them here, Officers Menchaca, Boston, Burns and Perkins are each individually entitled to qualified immunity for their conduct. As discussed above:

- There had been a report that a prowler was trying to break into a resident's home;

- When the officers arrived, they saw Gonzalez standing by the residence holding a steel pipe;

- Gonzalez refused to drop the pipe when requested and instead began running away from the officers in an attempt to evade them;

- It was not until Gonzalez was chased down by the officers that he was taken into custody; and,

- The steel pipe was not found until after Gonzalez was taken into custody. Thus, the officers believed he had possession of it during the entire pursuit and was in a position to use it against the officers.

22. Plaintiff contends that they did not have probable cause to take him into custody. This, however, does not change the officers' objectively reasonable belief that Gonzalez posed a threat to the residents in the area and to the officers themselves. Even if this reasonable belief was incorrect, the officers are still entitled qualified

immunity.

23. To this end, the officers are entitled to make such a mistake in their perception. The officers saw an immediate threat to their and other's safety and acted to prevent the threat. Under these circumstances, the officers should be entitled to qualified immunity. *Saucier*, 533 U.S. at 206 ["Officers can have reasonable, but mistaken beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution."]; *Billington v. Smith*, 292 F.3d 1177, 1184 (2002) ["[A]n officer might be reasonably mistaken as to the facts justifying his actions . . . so that an officer could use objectively excessive force without clearly violating the Constitution."]

## IV.

## PLAINTIFF LACKS EVIDENCE TO SUPPORT ANY CLAIM AGAINST THE CITY OF MAYWOOD UNDER *MONELL*

24. Plaintiff has also alleged a 42 U.S.C. § 1983 claim against the City of Maywood. Pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), local governments are subject to liability under 42 U.S.C. § 1983 only where that local government's official policy or custom causes a constitutional tort. See also, *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412, 424 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct. 915, 926, 99 L. Ed. 2d 107, 120 (1988).

25. To this end, a municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. See, *McDade v. West*, 223 F.3d 1135, 1142 (9th Cir. 2000); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). Rather, to impose municipal liability for a violation of constitutional rights, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of

plaintiff's constitutional rights; and, (4) that the policy was the moving force behind the constitutional violation. *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Plumeau v. Sch. Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

26. Liability may also be premised on a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 160; *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) ["A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' [Citations.] A 'policy' can be one of action, [citation], or inaction, [citations]."]

27. Plaintiff's claim, however, against the City of Maywood fails. First, as illustrated in detail above, the officers acted with substantial justification. They perceived an immediate threat to their and the safety of other others in the area and responded appropriately. Thus, they did not use constitutionally excessive conduct.

28. Given that they did not use excessive force, the City of Maywood cannot be held liable for any claims based on the same conduct. "[N]either *Monell* [citation omitted] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799; 106 S. Ct. 1571, 1573; 89 L. Ed. 2d 806, 810-811 (1986); See also, *Scott v. Heinrich*, 39 F.3d 912, 916 (9th Cir. 1994); *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996).

29. Further, Plaintiff's assertion that the City of Maywood did not have in place reasonable polices and procedures with respect to pursuits and taking suspects into custody or that they did not have an adequate training program for officers

engaged in such pursuits equally fails.

30. The inadequacy of police training may serve as the basis for § 1983 liability but "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality -- a 'policy' as defined by our prior cases -- can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.

31. In this case, however, is there no evidence of a failure by the City of Maywood to adequately train its officers as alleged by Plaintiff herein, let alone a "deliberate" or "conscious" failure to train. Furthermore, even if the officers did not properly apply their training, there is still no municipal liability. For there to be any liability, the focus must be on the adequacy of the training itself and not the fashion in which the training was applied:

> "It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391.

32. Consequently, given that the officers' conduct was appropriate and given that they were adequately trained, the City of Maywood is not liable to Plaintiff under *Monell*.

///
///
///
///

# V.

## THE OFFICERS' USE OF FORCE WAS JUSTIFIED UNDER STATE LAW AND, THEREFORE, PLAINTIFF'S CLAIM FOR ASSAULT AND BATTERY ALSO FAILS

33. California *Penal Code* § 835a provides, in pertinent part, that "Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance." In addition, *Civil Code* §50 states that "[a]ny necessary force may be used to protect from wrongful injury the person or property of oneself. . . ." Additionally, *Government Code* §820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

34. This extends to the use of force where done in an attempt to prevent some great bodily harm or injury upon himself or another person. See, *Penal Code* §§ 196 and 197; *People v Rivera* (1992) 8 Cal.App.4th 1000, 1007, 10 Cal.Rptr.2d 785, 789; *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416, 422, 281 Cal.Rptr. 343, 347.

35. At the core of these statutes is the recognition by the California legislature that officers should have immunity for those discretionary actions which are necessary to apprehend criminals, even if they result in a suspect's death. In other words, officers must be allowed to exercise their unfettered discretion in responding to emergency situations which require split second decisions and the ability to defend themselves without being second guessed at a later date. *Edson v. City of Anaheim* (1998) 63 Cal. App. 4th 1269, 1273, 74 Cal.Rptr.2d 614, 616.

36. In *Edson v. City of Anaheim, supra*, the plaintiff's decedent (Edson) led the police on a high-speed pursuit. Following the pursuit, he ran from his car out of the officer's sight, and emerged at the top of a balcony at a hotel. With the officer's

gun pointed at Edson, the officer yelled for Edson to stop and put up his hands. Edson ignored the commands and ran along the balcony in front of several motel rooms. Edson then stopped in front of one of the rooms, spun around toward the officer and reached for his jacket. Thinking that Edson was reaching for a gun, the officer fired and killed him.

37. Edson's widow sued the officer and the City under various state law theories, including wrongful death, contending that the officer used unreasonable force. The trial court rejected the widow's claim, finding for the defendants. In affirming the trial court's judgment, the court of appeal equally found that the officer acted reasonably under the circumstances especially where he thought that Edson was reaching for a gun:

> "Unlike private citizens, police officers act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties, because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." [Citation]. They are, in short, not similarly situated to the ordinary battery defendant and need not be treated the same. In these cases, then, ". . . the defendant police officer is in the exercise of the privilege of protecting the public peace and order [and] he is entitled to the even greater use of force than might be in the same circumstances required for self-defense. . . . The burden of proof [is] upon the plaintiff to establish the use of excessive force. . . . [Citation]." *Id.*, 63 Cal.App.4th at 1273.

38. Equally here, the officers were presented with a situation where they believed that Gonzalez was armed with a steel pipe and that he intended to use it either against civilians in the area or against them. Consequently, they had no choice but to use that force necessary to take him into custody. The fact that he was ultimately found not be armed with the pipe at the time he was taken into custody does not change the fact that the officers reasonably believed he was still armed at the

10
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

time. Under these circumstances, Gonzalez's claim for assault and battery fails.

## VI.

## PLAINTIFF CANNOT ESTABLISH HIS CLAIM FOR FALSE ARREST

39. "False arrest is not a different tort but merely one way of committing the tort of false imprisonment. *Asgari v. City of Los Angeles* 15 Cal.4th 744, 752, fn. 3 [63 Cal. Rptr. 2d 842, 937 P.2d 273 (1997)]; *Arpin v. Santa Clara Valley Transp. Agency* 261 F.3d 912, 919 (9th Cir. 2001). The tort of false imprisonment 'is premised upon a violation of the personal liberty of another accomplished without lawful authority ... .' *Asgari*, at p. 753.

40. It is, however, recognized that officers are entitled to confine a person as part of their investigation into an incident and for officer safety and to preserve the safety of those in the vicinity.

41. As set forth in detail above, the officers had probable cause to arrest Gonzalez. Therefore, Defendants are not liable for falsely arresting or imprisoning Gonzalez.

## VII.

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO PLAINTIFF'S CONSPIRACY CLAIM

42. Parenthetically, an individual officer cannot be held liable unless he or she personally acted in causing a Civil Rights deprivation. (Citations omitted) *Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986). To this extent, qualified immunity is an entitlement to not go to trial, not merely a defense from liability. *Saucier v. Katz*, 533 U.S. 194, 200, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001). Analysis of the qualified immunity defense is a two step process.

43. The initial inquiry is whether, on the facts alleged, a constitutional right has been violated. If no such right has been violated, plaintiff cannot prevail. 533 U.S. at 200, 201. If a violation of a constitutional right does or may exist, the Court must consider whether that right was "clearly established."

44.     Plaintiff here makes reference to an alleged conspiracy on the part of the City of Maywood, Chief of Police Bruce Leflar and the individual officers. Section 1983 does not, however, provide a diffuse "violation of civil rights" cause of action. It is well established that 42 U.S.C. §1983 "is not itself a source of substantive rights," but merely provides "a method of vindicating federal rights elsewhere conferred." <u>Baker v. McCollan</u>, 443 U.S. 137, 144 fn. 3 (1979).

45.     To this end, Courts have held a plaintiff can only allege conspiracy under section 1983 if there is an express or implied agreement to deprive a plaintiff of his constitutional rights and an actual deprivation of those rights resulting from the agreement. <u>Woodrum v. Wordward County</u>, 866 F.2d 1121, 1126 (9th Cir. 1989); <u>Dooley v. Reiss</u>, 736 F.2d 1392 (9th Cir. 1984) cert. denied 469 U.S. 1038, 105 S. Ct 518, 83 L.Ed.2d 407 (1984).

46.     Proof of a conspiracy in violation of section 1983 requires proof of the following elements: (1) an agreement between the defendants to deprive the plaintiff of a constitutional right; (2) an overt act in furtherance of the conspiracy and; (3) a constitutional violation. <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856-57 (9th Cir. 1999) (en banc)

47.     Plaintiff's complaint, however does not allege adequate facts that would support an inference of an agreement among any of the parties or a subjective intent to violate constitutional rights. Further, neither has Plaintiff to date presented any facts supporting such an agreement. Thus, Gonzalez's claim fails.

## VIII.
## **PLAINTIFF HAS FAILED TO ESTABLISH HIS CLAIM FOR TORTS IN ESSENCE**

48.     Under California law, a torts in essence claim requires the demonstration of a statutory violation. California *Evidence Code* § 669. Although Plaintiff has alleged such violations, he has failed to produce any evidence during the entire case supporting any of these alleged violations. Moreover, he has failed to produce any

evidence, as is also required by California law, that these violations caused injuries of the type the statutes were intended to prevent. See, *Michael R. v. Jeffrey B.*, 158 Cal.App.3d 1059, 1066 (1984). Thus, Plaintiff's claim fails.

## IX.

## PLAINTIFF CANNOT ESTABLISH HIS CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49.  The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct.

50.  Courts have strictly adhered to the position that the plaintiff, in order to recover for intentional infliction of emotional distress, must show that the conduct that produced the purported emotional distress was outrageous. "Extreme and outrageous conduct is that which goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. *Davidson*, 32 Cal.3d at 209-210.

51.  Insults, indignities, annoyances, petty oppressions or other trivialities will not suffice. The conduct must be such that it would cause an average member of the community to immediately react in outrage. *Gomon v. TRW, Inc.*, 28 Cal.App.4th 1161, 1172 (1994); *Cochran v. Cochran*, 65 Cal.App.4th 488, 496 (1998). Extreme and outrageous conduct is that "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Potter v. Firestone Tire & Rubber Co.*, (1993) 6 Cal.4th 965, 1001; *Cantu v. Resolution Trust Corp.*, (1992) 4 Cal.App.4th 857, 888.

52.  To this end, California law also requires that plaintiff prove that he suffered objective symptoms of distress. "Headaches, insomnia, anxiety, irritability [are] not 'severe' under California law." *Standard Wire & Cable Co. v. Ameritrust*

*Corp.*, 697 F.Supp. 368, 372 (C.D. Cal. 1988); *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F.Supp. 911, 919 (C.D. Cal 1991).

53. As detailed above, the officers observed a series of events that provided probable cause to arrest Gonzalez. Thus, there is no evidence to demonstrate that they acted with the intention of causing severe emotional distress, or that their behavior was extreme and outrageous. Therefore, they are not liable for any supposed intentional infliction of emotional distress.

## X.

## PLAINTIFF CANNOT PROCEED AGAINST DEFENDANTS UNDER EITHER A THEORY OF NEGLIGENCE OR NEGLIGENT EMPLOYMENT/RETENTION/SUPERVISION

54. Public entities have liability for injury only when that liability has been assumed by statute. See, Government Code §815(a); <u>Duarte v. City of Santa Jose</u> 100 Cal.App.3d 648, 653 (1980); <u>Swaner v. City of Santa Monica</u> 150 Cal.App.3d 789, 796 (1984).

55. Moreover, as repeatedly expressed by the California Supreme Court '[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied.' [Citation.]" <u>Zelig v. County of Los Angeles</u> 27 Cal.4th 1112, 1127-1128 [119 Cal. Rptr. 2d 709, 45 P.3d 1171 (2002).

56. Common law negligence or negligent employment/retention/supervision as alleged against Defendants is impermissible since these claims are not based upon statute. See, *Munoz v. City of Union City,* 120 Cal.App.4th 1077 (2004) [The court held that a plaintiff could not pursue a common law negligence claim against the City of Union City resulting from the death of man shot by an officer.]

///

///

14
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## XI.

## PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR VIOLATION OF THE CALIFORNIA CIVIL RIGHTS ACT

57. Plaintiff alleges a cause of action for violation of California *Civil Code* sections 52.1(a)(b) and 51.7. Nowhere in the cause of action, however, does Plaintiff specify the factual basis of the claim nor the nature of the damages he has suffered as a consequence of the purported violation. Further, neither has he at any time presented any evidence supporting the claim. Thus, the claim fails.

## XII.

## EVIDENTIARY ISSUES

58. Defendants have filed eight motions in limine. They are:

(1) Motion In Limine To Preclude References To And Questions Regarding Alleged Police Misconduct, Personal Officer Behavior And Policies And Procedures Of Other Police Departments;

(2) Motion In Limine To Prohibit References To And Questions Regarding Character Evidence And Evidence Of Other Alleged Bad Acts;

(3) Motion In Limine To Preclude Introduction Of Evidence Of Defendants' Net Worth Prior To Establishing Prima Facie Case For Punitive Damages;

(4) Motion In Limine To Preclude Introduction Of Evidence Of Liability Insurance;

(5) Motion In Limine To Preclude Introduction Of Evidence Of Subsequent Remedial Measures;

(6) Motion In Limine To Prohibit Plaintiff's Use Of Undisclosed Witnesses, Evidence Or Testimony;

(7) Motion In Limine To Bifurcate Plaintiff's Monell Claim; and,

(8) Motion In Limine To Bifurcate Punitive Damages.

# XIII.
# ABANDONMENT OF ISSUES

59. Defendants do not abandon any issues.

# XIV.
# JURY TRIAL

60. Both parties demand a jury trial. The issue of qualified immunity is a question of law that must be determined by the court.

Dated: August 21, 2008          BOHM, MATSEN, KEGEL & AGUILERA, LLP

By: _____
Richard A. Semon
Attorneys for Defendants
CITY OF MAYWOOD, BRUCE LEFLAR, FRANK MENCHACA, JASON PERKINS, JOHN BOSTON and BRETT BURNS

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW